UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
JEFFREY PURCELL and ANDREA L. PURCELL,
husband and wife, as individuals, in *pro per*,

                              Plaintiffs,

        -against-

NAVIENT SOLUTIONS, LLC; SALLIE MAE; and
DOES 1-10,

                             Defendants.
-------------------------------------------------------------------x

18-CV-6045 (CS)

**OPINION AND ORDER**

Appearances:

Jeffrey Purcell
Andrea L. Purcell
Merritt Island, Florida
*Plaintiffs Pro Se*

Anne B. Sekel
Nicole M. Marschean
Foley & Lardner LLP
New York, New York
Irina N. Kashcheyeva
Foley & Lardner LLP
Detroit, Michigan
*Counsel for Defendant Sallie Mae Bank*

Eric M. Hurwitz
Dustin P. Mansoor
Stradley Ronon Stevens & Young, LLP
New York, New York
*Counsel for Defendant Navient Solutions, LLC*

Seibel, J.

      Before the Court are the motions to dismiss and compel arbitration of Defendants Sallie Mae Bank ("SMB"), (Doc. 28), and Navient Solutions, LLC ("Navient"), (Doc. 31).

**I.     BACKGROUND**

I accept as true the facts, but not the conclusions, set forth in Plaintiffs' Amended Complaint.  (Doc. 43 ("AC").)[1]

**A.     Facts**

Plaintiffs Jeffrey Purcell ("Mr. Purcell") and Andrea Purcell ("Mrs. Purcell") were residents of New York at the time the original Complaint was filed, (Doc. 1 ¶ 8), but now reside in Florida, (AC ¶ 6).  Upon information and belief, Defendants are foreign corporations authorized to do business in New York.  (*Id.* ¶ 10.)  The Plaintiffs' factual allegations in their Amended Complaint are divided in four sections relating to:  (1) Mr. Purcell and Navient, (*id.* ¶¶ 11-15); (2) Mr. Purcell and SMB, (*id.* ¶¶ 16-21); (3) Mrs. Purcell and Navient, (*id.* ¶¶ 22-25); and (4) Mrs. Purcell and SMB, (*id.* ¶¶ 26-30).

       1.     Mr. Purcell v. Navient

On or about November 9, 2017, Mr. Purcell sent Navient a Notice of Dispute that included a demand to cease telephonic communications, which Navient received on November 13.  (*Id.* ¶¶ 11-12).  From November 16, 2017, through June 28, 2018, Plaintiffs allege that Navient violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by calling Mr. Purcell's cell phone thirty-nine times after receiving Mr. Purcell's demand to stop calling.  (*Id.* ¶ 13.)  Plaintiffs further allege that between those dates, Navient willfully and knowingly

---

[1] The Court granted Plaintiffs leave to amend their complaint, (Minute Entry dated Sept. 25, 2018), which they did on October 10, 2018, (Doc. 25).  Because pages three and four of the October 10 version of the Amended Complaint were missing, the Court ordered the Plaintiffs to file a complete version, (Doc. 40), which was filed on January 8, 2019, (AC).  Although page 9 of the January 8 version seems to be missing, I gather from the October 10 version that page 9 is the Certificate of Service.  (Doc. 25 at 9.)

violated the TCPA by leaving thirty-nine recorded messages on Mr. Purcell's cell phone using an automatic telephone dialing system or artificial or prerecorded voices. (*Id.* ¶ 14.)

### 2. Mr. Purcell v. SMB

Mr. Purcell sent SMB Notices of Dispute on November 8, 2017, and December 1, 2017,[2] both of which included a demand to cease telephonic communications. (*Id.* ¶¶ 16-17.) On or about December 18, 2017,[3] SMB confirmed receipt of Mr. Purcell's Notice of Dispute. (*Id.* ¶ 18.) Plaintiffs allege that from January 8 through June 28, 2018, SMB willfully and knowingly violated the TCPA by leaving nine recorded messages on Mr. Purcell's cell phone using an automatic telephone dialing system or artificial or prerecorded voices. (*Id.* ¶ 19.) Plaintiffs further allege that between those dates, SMB violated the TCPA by calling Mr. Purcell's cell phone twenty-three times after receiving Mr. Purcell's demand to stop calling. (*Id.* ¶ 20.)

### 3. Mrs. Purcell v. Navient

On or about November 9, 2017, Mrs. Purcell sent Navient a Notice of Dispute, which included a demand to cease telephonic communications, which Navient received on November 13. (*Id.* ¶¶ 22-23). Plaintiffs allege that from November 16, 2017, through June 28, 2018, Navient violated the TCPA by calling Mrs. Purcell's cell phone nineteen times after receiving Mrs. Purcell's demand to stop calling. (*Id.* ¶ 24.)

---

[2] Plaintiffs' Amended Complaint refers to this date as December 1, 2018. (AC ¶ 17.) Because the original Complaint was filed in July 2018 and contained the same allegations, I assume Plaintiffs meant to state this date as December 1, 2017.

[3] Plaintiffs' Amended Complaint refers to this date as December 18, 2018. (AC ¶ 18.) Because the original Complaint was filed in July 2018 and contained the same allegations, I assume Plaintiffs meant to state this date as December 1, 2017.

4. Mrs. Purcell v. SMB

On or about December 18, 2017, Mrs. Purcell sent SMB a Notice of Dispute via United States Postal Service Registered Mail, which included a demand to cease telephonic communications. (*Id.* ¶ 26.) On or about January 8, 2018, SMB confirmed receipt of Mrs. Purcell's Notice of Dispute. (*Id.* ¶ 27.) Plaintiffs allege that from January 8 through June 28, 2018, SMB willfully and knowingly violated the TCPA by leaving fourteen recorded messages on Mrs. Purcell's cell phone using an automatic telephone dialing system or artificial or prerecorded voices. (*Id.* ¶ 28.) Plaintiffs also allege that between those dates, SMB violated the TCPA by calling Mrs. Purcell's cell phone eighteen times after receiving Mrs. Purcell's demand to stop calling. (*Id.* ¶ 29.) Since Plaintiffs filed their first complaint on July 3, 2018, SMB continues calling Plaintiffs' cell phones. (*Id.* ¶¶ 15, 21, 25, 30.)

Based on these allegations, Plaintiffs claim that both Defendants have demonstrated willful or knowing non-compliance with 47 U.S.C. §227(b)(1)(A) by using an automatic telephone dialing system to call the Plaintiffs' phone numbers, which are assigned to a cellular telephone service. (*Id.* ¶¶ 32, 34-38.) Plaintiffs allege they have never given either Defendant permission to call their cell phones. (*Id.* ¶¶ 35, 38.)

Plaintiffs allege that there are no arbitration agreements between the parties. (*Id.* ¶ 7.) Defendants contend otherwise, providing promissory notes that they allege were executed by Plaintiffs to obtain student loans and in which Plaintiffs agreed to arbitrate. "While it is generally improper to consider documents not appended to the initial pleading or incorporated in that pleading by reference in the context of a Rule 12(b)(6) motion to dismiss, it is proper (and in fact necessary) to consider such extrinsic evidence when faced with a motion to compel arbitration." *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, No. 06-CV-839, 2006 WL

2265041, at *3 n.6 (S.D.N.Y. Aug. 8, 2006).[4]  Therefore, I consider the documents submitted by Defendants (as well as Plaintiffs' objections thereto).

SMB submits the Declaration of Sheri Jenkins, the Director of the Office of the Customer Advocate at SMB.  (Doc. 30 ("Jenkins Decl.").)  Attached to the Jenkins Declaration are six documents entitled "Application and Promissory Note," which Jenkins testified, based upon personal knowledge and review of SMB's records, to be true and correct copies of the applications and promissory notes executed by Plaintiffs as either the borrower or the co-signor for six education loans issued by SMB.  (Jenkins Decl. ¶¶ 1-2.)  The Jenkins Declaration includes a summary of the Plaintiffs' loan applications submitted to SMB:

a.  Loan Application ending in 1306 & the corresponding Promissory Note cosigned by Plaintiff Jeffrey Purcell on May 12, 2014, for the loan issued to Grace Purcell ("Promissory Note 1");

b.  Loan Application ending in 1306 & the corresponding Promissory Note signed by Plaintiff Andrea L. Purcell as the primary borrower on August 1, 2014, and cosigned by Plaintiff Jeffrey Purcell on August 2, 2014 ("Promissory Note 2");

c.  Loan Application ending in 1502 & the corresponding Promissory Note signed by Plaintiff Andrea L. Purcell as the primary borrower on April 13, 2015 ("Promissory Note 3");

d.  Loan Application ending in 8076-01 & the corresponding Promissory Note cosigned by Plaintiff Andrea L Purcell on July 9, 2015, for the loan issued to Grace Purcell ("Promissory Note 4");

e.  Loan Application ending in 8045-01 & the corresponding Promissory Notes cosigned by Plaintiff Andrea L. Purcell on November 29, 2015 for the loan issued to Grace Purcell ("Promissory Note 5"); and

f.  Loan Application ending in 5010-01 & the corresponding Promissory Note cosigned by Plaintiff Andrea L. Purcell on August 3, 2016, for the loan issued to Grace Purcell ("Promissory Note 6").

---

[4] The Court will send to Plaintiffs copies of all unpublished decisions cited in this Opinion and Order.

(*Id.* ¶ 3.) Each Note contains a separately captioned section which reads, in bold-face and all capital letters: "ARBITRATION AGREEMENT." The arbitration agreements provide, in pertinent part:

> To the extent permitted under federal law, you and we agree that either party may elect to arbitrate – and require the other party to arbitrate – any Claim under the following terms.
>
> 1. **RIGHT TO REJECT:** You may reject this Arbitration Agreement by mailing a personally signed rejection notice . . . certified mail, return receipt requested, within 60 days after the date of your first disbursement of loan proceeds . . . .
>
> 2. **IMPORTANT WAIVERS:** If you or we elect to arbitrate a Claim, YOU AND WE BOTH WAIVE THE RIGHT TO: (1) HAVE A COURT OR A JURY DECIDE THE CLAIM . . . . Other rights are more limited in arbitration than in court or are not available in arbitration . . . .
>
> 4. **"CLAIM"** means any legal claim, dispute or controversy between you and us that arises from or relates in any way to this Note, including . . . any dispute relating to: (1) the imposition or collection of principal, interest, attorneys' fees, collection costs or other fees or charges[5] relating to this Note; (2) other provisions of this Note; . . . .
>
> 5. **ELECTING OR REQUIRING ARBITRATION:** The Claimant may elect arbitration of a Claim by initiating an arbitration in accordance with the Administrator's rules. The other party may elect arbitration by giving written notice of an election to arbitrate. This notice may be given after a lawsuit has been filed and may be given in papers or motions in the lawsuit. If such a notice is given, the Claim shall be resolved by arbitration under this Arbitration Agreement and the applicable rules of the Administrator then in effect. It will be up to the Claimant to commence the arbitration proceeding . . . .
>
> 9. **GOVERNING LAW:** This Arbitration Agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the FAA, and not by any state law concerning arbitration.

---

[5] Promissory Notes 5 and 6 do not contain the words "or charges" under the definition of "Claim." (Jenkins Decl. Ex. A Promissory Note 5 at 7, Promissory Note 6 at 9.) That fact has no bearing on my analysis here.

(*Id.* Ex. A Promissory Note 1 at 5-6, Promissory Note 2 at 5-6, Promissory Note 3 at 6-7, Promissory Note 4 at 6-7, Promissory Note 5 at 7-8, Promissory Note 6 at 9-10.)[6] Jenkins testified that any notice of rejection of the arbitration agreements sent by Plaintiffs would be recorded in SMB's database for the relevant loan in the ordinary course and that the database does not contain any rejection by either Plaintiff for any of the loans. (*Id.* ¶¶ 4-6.) The same promissory notes also contained a captioned section which reads, in bold face letters: "Our Communications with You." In that section, Plaintiffs authorized automated outreach using any phone numbers they provided to SMB in connection with any loans. (Jenkins Decl. Ex. A Promissory Notes 1-5 at 4.)

Defendant Navient also provided a declaration, (Doc. 31-2 ("Iorio Decl.")), and exhibits. Michelle Iorio, a senior account analyst at Navient, testified on the basis of her personal knowledge and review of Navient records, of which she is a joint custodian. (Iorio Decl. ¶ 2.) She averred that on November 25, 2005, Plaintiffs executed an application and promissory note for a student loan with Navient. (*Id.* ¶¶ 2, 6-7.) The promissory note with Navient, attached to the Iorio Declaration, contains an agreement to arbitrate any and all disputes. (*Id.* Ex. 2 at 18-19.)[7] The Note requires the arbitration of any "claim, dispute or controversy . . . that arises from or relates in any way to the Note or the relationships resulting from the Note, including any dispute concerning the existence, scope, validity or enforceability of this Arbitration Agreement or the Note." (*Id.* at 19.) The Note also says that the term "Claim" is to be given "the broadest possible meaning." (*Id.*) It further provides:

---

[6] Citations to Exhibit A of the Jenkins Declaration refer to document's original pagination and not the Court's Electronic Filing System pagination stamped at the top of each page.

[7] Citations to Exhibit 2 of the Iorio Declaration refer to the Court's Electronic Case Filing system pagination stamped at the top of each page.

> **REJECTION OF ARBITRATION AGREEMENT:** I may reject this Arbitration Agreement by sending you a notice ("Rejection Notice") that you receive within sixty (60) days after the date I signed the Note.

(*Id.*) Iorio testified, based on her review of Navient's business records, that no rejection notice was ever received from Plaintiffs or anyone acting on their behalf with respect to the arbitration agreement contained in the promissory note. (Iorio Decl. ¶ 12.)

### B. Procedural History

Plaintiffs filed their first complaint on July 3, 2018. (Doc. 1.) On August 27, SMB requested a pre-motion conference, (Doc. 11); on September 11, Navient did the same, (Doc. 16); and on September 13, Plaintiffs replied to SMB's pre-motion letter, (Doc. 21). The Court held the pre-motion conference on September 25 and granted Plaintiffs leave to amend their complaint. (Minute Entry dated Sept. 25, 2018.) Plaintiffs filed an incomplete version of the Amended Complaint on October 10, 2018, (Doc. 25), and a complete version on January 8, 2019, (AC). SMB filed its motion to dismiss on November 8, (Doc. 28), along with its memorandum of law in support of that motion, (Doc. 29 ("SMB Mem.")), and the Jenkins Declaration. Navient filed its motion to dismiss on November 15, (Doc. 31), along with its memorandum, (Doc. 31-1 ("Navient Mem.")), the declaration of Michelle Iorio, (Iorio Decl.), and the declaration of Dustin P. Mansoor, (Doc. 31-3 ("Mansoor Decl.")). Plaintiffs filed their opposition to SMB's motion on December 7, (Doc. 33 ("P's SMB Opp.")), and to Navient's motion on December 18, (Doc. 34 ("P's Navient Opp.")). On January 4, 2019, Defendants filed reply memoranda, (Docs. 39 ("Navient Reply"), 41 ("SMB Reply")), and supplemental declarations, (Docs. 39-1, 42 ("Suppl. Jenkins Decl.")).

## II. DISCUSSION

Plaintiffs allege violations of the TCPA. Both Defendants argue that there are arbitration agreements between the parties and, therefore, this action is subject to arbitration and should be dismissed. Plaintiffs disagree and say Defendants should be sanctioned under Federal Rule of Civil Procedure 11(b).[8]

### A. Motion to Compel Arbitration

Arbitration clauses are subject to the Federal Arbitration Act ("FAA"). *See Stolt-Nielson S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 681 (2010). "The [FAA] allows parties to agree by contract that an arbitrator, rather than a court, will resolve . . . underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, – S. Ct. – , No. 17-1272, 2019 WL 122164, at *2 (U.S. Jan. 8, 2019). Under Section 2 of the FAA

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The FAA "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). The Second Circuit has explained:

> In accordance with the strong federal policy in favor of arbitration, the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

---

[8] Courts must afford *pro se* plaintiffs "special solicitude." *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994). Where, as here, plaintiffs proceed *pro se*, the court should read their supporting papers "liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

*WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) (internal quotation marks and citation omitted). To determine whether an action is arbitrable under the FAA, a district court must resolve four inquiries: (1) "whether the parties agreed to arbitrate"; (2) "the scope of the arbitration agreement"; (3) "whether Congress intended those claims to be nonarbitrable"; and (4) "if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration." *See Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987).

        1.      <u>The Parties Agreed to Arbitrate</u>

Plaintiffs attack the sufficiency of Defendants' evidence that they agreed to arbitrate. They say that Defendants have "failed to provide strict proof that these documents are authentic, endorsed by Plaintiffs, or that Plaintiffs have any knowledge of said documents," (P's SMB Opp. at 2; P's Navient Opp. at 2), but they do not deny that they agreed to arbitrate or say that the promissory notes Defendants have provided are inauthentic. Had they done so, I would have held a hearing to resolve a factual dispute. But Plaintiffs do not raise a factual dispute, merely a legal one: they say the Jenkins Declaration and Iorio Declaration are insufficient to authenticate the attached documents. Plaintiffs' arguments can be explained as follows: (1) the Declarations were not properly executed; (2) the Declarations and attached exhibits are hearsay and untrustworthy; and (3) the exhibits are substantively deficient because there is information missing in them. (P's SMB Opp. at 2-3; P's Navient Opp. at 2-3.)

These arguments are meritless. First, the Jenkins and Iorio Declarations are sufficient to authenticate the attached documents. An unsworn declaration is admissible evidence under 28 U.S.C. § 1746 when it is "subscribed by [the person], as true under penalty of perjury, and dated, in substantially the following form: . . . 'I declare (or certify, verify, or state) under penalty of

perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature).'" The Jenkins and Iorio Declaration each contain a statement that substantially complies with this directive. (*See* Jenkins Decl. at 2-3; Iorio Declaration at 3.) Contrary to Plaintiffs' arguments, there is no requirement – in 28 U.S.C. § 1746 or otherwise – that for a declaration to be admissible, all parties must be familiar with the declarant, the declarant's signature must be witnessed by a notary public, or the declaration must contain a statement that the declarant was sworn prior to signing the declaration. *See, e.g., Onewest Bank N.A. v. Louis*, No. 15-CV-597, 2016 WL 3552143, at *9 n.5 (S.D.N.Y. June 22, 2016) (describing requirements of 28 U.S.C. § 1746), *report and recommendation adopted*, 2016 WL 4059214 (S.D.N.Y. July 28, 2016). I also reject Plaintiffs' objection that the Iorio Declaration was prepared by someone other than Ms. Iorio because it is common practice for attorneys to prepare Declarations on behalf of witnesses. *See Zimmerman v. Hanks*, 248 F.3d 1162 (Table), No. 00-177, 2000 WL 1871671, at *3 (7th Cir. Dec. 19, 2000) ("It is common practice for lawyers to draft affidavits for their client's signature; we know of no court that refuses to consider an affidavit simply because it is not personally written by the witness.") Therefore, I find both the Jenkins and Iorio Declarations to be properly executed.[9]

Second, the relevant promissory notes and applications are admissible because they fall under Federal Rule of Evidence ("FRE") 803(6), the "business records exception" to the hearsay rule. Fed. R. Evid. 803(6). Under FRE 803(6), records that would otherwise be inadmissible as hearsay are admissible if

> (A) the record was made at or near the time by . . . someone with knowledge;
> (B) . . . was kept in the course of a regularly conducted activity of a business . . . ;
> (C) making the record was a regular practice of that activity; (D) all these conditions

---

[9] After Plaintiffs filed opposition memoranda, Defendant SMB filed the Supplemental Jenkins Declaration, which was also properly executed. (Suppl. Jenkins Decl. at 2-30.)

are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) . . . ; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

*Id.* "The custodian need not have personal knowledge of the actual creation of the document to lay a proper foundation . . . nor is there any requirement under Rule 803(6) that the records be prepared by the party who has custody of the documents and seeks to introduce them into evidence." *Health All. Network, Inc. v. Cont'l Cas. Co.*, 245 F.R.D. 121, 130 (S.D.N.Y. 2007) (internal quotation marks omitted) (alteration in original).

Both Defendants have complied with FRE 803(6). Navient authenticated the promissory note between Navient and the Plaintiffs through the Iorio Declaration. Ms. Iorio attests that she is familiar with Navient's records and policies and that the Declaration was made based on her personal knowledge after reviewing Navient's records, which Navient maintains in the ordinary course of business. (Iorio Decl. ¶ 2.) Navient also provided true and correct copies of the promissory note.[10] (*Id.* Ex. 2.) These facts support the conclusion that Navient complied with FRE 803(6)'s requirements.

SMB authenticated the promissory notes through the Jenkins Declaration and the Supplemental Jenkins Declaration. Jenkins made her Declaration based upon her "personal knowledge and [her] review of SMB's records." (Jenkins Decl. ¶ 1.) Jenkins attested:

> [i]n the ordinary course of business, SMB maintains a central, computerized student loan database. The database contains a file for each of the student loans SMB originates or services. Any correspondence or documentation that SMB sends or receives in connection with any individual student loan is promptly recorded in the database.

---

[10] Because the document bears the Plaintiffs' signatures, it is also admissible under FRE 801(d)(2).

(*Id.* ¶ 4.) The Jenkins Supplemental Declaration further details Jenkins's familiarity with how SMB maintains records in the ordinary course of business. (Jenkins Suppl. Decl. ¶¶ 4-6.) SMB provided true and correct copies of the promissory notes. (Jenkins Decl. Ex. A.) These facts support the conclusion that SMB complied with FRE 803(6)'s requirements. Thus, I find that SMB also complied with FRE 803(6).[11]

The third argument Plaintiffs raise is that certain omissions of information – SMB's exhibit did not indicate the amount Plaintiffs allegedly promised to pay or include Plaintiffs' signatures, (P' SMB Opp. at 3), and Navient failed to provide assignments or other chains of custody to explain how Navient is a holder of the application and promissory note (P' Navient Opp. at 3) – render the Defendants' exhibits inadmissible. I disagree. The notes originally provided by SMB were obviously redacted to remove almost all personal information. (Jenkins Decl. Ex. A.) SMB has now provided less-redacted copies, which reveal that each document contains a loan amount and Plaintiffs' electronic signatures. (Jenkins Suppl. Decl. Ex. A.) Navient's Declarations explain the corporate restructuring that resulted in Navient servicing Plaintiffs' loan. (Mansoor Decl. ¶¶ 2-3; *id.* Ex. A.)

Thus, I reject Plaintiffs' arguments attacking the sufficiency of Defendants' evidence. Instead, I find that the plain language of the arbitration agreements provides that the parties agreed to resolve their disputes by arbitration. Moreover, under the terms of their agreements with both Defendants, Plaintiffs were afforded the opportunity to send a notice of rejection of the

---

[11] Further, even if the Declarations did not comply fully with FRE 803(6), I would retain the discretion to consider them because it is obvious that Defendants could authenticate them in court and because Plaintiffs do not deny executing them. *Cf. Delgado v. City of Stamford*, No. 11-CV-1735, 2015 WL 6675534, at *5 n.3 (D. Conn. Nov. 2, 2015) ("[T]he Court has discretion to consider unauthenticated . . . evidence where it is apparent that the party may be able to authenticate . . . [the] documents at trial.")

arbitration agreement within 60 days of the first disbursement. But Plaintiffs failed to file such a notice to either Defendant within 60 days. (Iorio Decl. ¶¶ 11-12; Jenkins Decl. ¶¶ 4-6.)

2. The Arbitration Agreements Cover Plaintiffs' Claims

The scope of the parties' arbitration agreements is broad. The arbitration clause contained in each of the promissory notes signed between the Plaintiffs and SMB states: "To the extent permitted under federal law, you and we agree that either party may elect to arbitrate – and require the other party to arbitrate – any Claim under the following terms." (Jenkins Decl. Ex. A Promissory Note 1 at 5, Promissory Note 2 at 5, Promissory Note 3 at 6, Promissory Note 4 at 6, Promissory Note 5 at 7, Promissory Note 6 at 9.) Claim is then defined in the contract as "any legal claim, dispute or controversy between you and us that arises from or relates in any way to this Note, including . . . any dispute relating to: (1) the imposition or collection of principal, interest, attorneys' fees, collection costs or other fees or charges relating to this Note." (*Id.* Ex. A Promissory Note 1 at 5, Promissory Note 2 at 5, Promissory Note 3 at 6, Promissory Note 4 at 6, Promissory Note 5 at 7, Promissory Note 6 at 9.) Additionally, SMB's arbitration clause contained the provision by which Plaintiffs provided consent and authorized SMB to contact them at "any phone number" provided in the application in connection with the application and any current or future loans owned or serviced by SMB. (*Id.* Ex. A Promissory Notes 1-5 at 4.) The arbitration clause in Navient's arbitration clause is similarly broad, requiring the arbitration of any "claim, dispute or controversy . . . that arises from or relates in any way to this Note, including . . . any dispute concerning the existence, scope, validity or enforceability of this Arbitration Agreement or the Note." (Iorio Decl. Ex. 2 at 19.)

Because the phone calls to Plaintiffs were placed in connection with trying to collect the debt Plaintiffs owed to Defendants under the notes (and in SMB's case because SMB's

promissory notes authorized SMB to call Plaintiffs regarding loans serviced by SMB) Plaintiffs' TCPA claims arise from or relate to the Notes and fall squarely within the arbitration clauses of the Plaintiffs' agreements with both Defendants. *See Lozada v. Progressive Leasing*, No. 15-CV-2812, 2016 WL 3620756, at *3 (E.D.N.Y. June 28, 2016) (collecting cases for proposition that broad arbitration clauses cover TCPA claims). My decision here is supported by the principle that, under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004) (internal quotation marks omitted). Where, as here, the arbitration clause is broadly worded to include any claim "arising from or relating to" the agreement, the dispute is presumptively arbitrable. *Greene v. Subcontracting Concepts L.L.C.*, No. 13-CV-15, 2014 WL 1087999, at *2 (S.D.N.Y. Mar. 19, 2014). And "in the absence of any express provision excluding a particular grievance from arbitration, only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (Brennan, J., concurring) (internal quotation marks and alteration omitted). No such evidence exists here.

Accordingly, the arbitration provisions at issue are broad enough to encompass this TCPA action.

### 3. TCPA Claims Are Arbitrable

Generally, "although all statutory claims may not be appropriate for arbitration, having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude waiver of judicial remedies for the statutory rights at issue." *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 258 (2009) (internal quotation marks and alterations omitted). "[T]he burden lies with the party attempting to avoid arbitration to show that Congress intended

15

to preclude a waiver of a judicial forum for his claims." *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 235 (2d Cir. 2006) (internal quotation marks omitted).

Plaintiffs have presented no evidence, and I see no indication, that Congress intended TCPA claims to be nonarbitrable. *See Lozada*, 2016 WL 3620756, at *4 (collecting cases); *Moore v. T-Mobile USA, Inc.*, No. 10-CV-527, 2012 WL 13036858, at *11 (E.D.N.Y. Sept. 28, 2012) (same), *aff'd* 548 F. App'x 686 (2d Cir. 2013) (summary order). Therefore, the Plaintiffs' TCPA claims are subject to arbitration.

### 4. Claims Should Not Be Stayed

While the Second Circuit has held that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration *and a stay requested*," *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) (emphasis added), neither party here has requested a stay. Accordingly, a stay is not required. *See Benzemann v. Citibank N.A.*, 622 F. App'x 16, 18 (2d Cir. 2015) (summary order) (absent request, no requirement that district court stay rather than entering judgment against plaintiff after granting motion to compel arbitration); *Valdez-Mendoza v. Jovani Fashion Ltd.*, No. 15-CV-7261, 2017 WL 519230, at *4 (E.D.N.Y. Feb. 8, 2017) (same). *But see Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 186 n.15 (S.D.N.Y. 2018) ("Since *Katz*, most of the district courts in our Circuit have hesitated to dismiss arbitrable claims, even where neither side has expressly requested a stay.") (collecting cases).

### B. Rule 11(b) Sanctions

Plaintiffs allege that Defendants violated Federal Rule of Civil Procedure 11(b) because the Jenkins and Iorio Declarations contain false representations and lack trustworthiness. These arguments are also meritless. First, the issue of Rule 11 sanctions is not properly before the

Court. Motions for sanctions under Rule 11 must be made by separate motion, Fed. R. Civ. P. 11(c)(2), which Plaintiffs have not filed here. But even the Plaintiffs had filed a separate motion under Rule 11, Plaintiffs have not pointed to a single false statement in either Declaration filed by Defendants. Both Declarations comply with the requirements of 28 U.S.C. § 1746, and Plaintiffs do not dispute anything contained in the underlying applications or promissory notes. They do not contend that they did not agree to borrow or act as co-signers for the loans at issue. And Plaintiffs also do not dispute that they executed promissory notes with both SMB and Navient.[12] Accordingly, I see no basis to find that either Defendant violated Rule 11(b).

### III. CONCLUSION

For the reasons discussed, SMB's and Navient's motions to dismiss and compel arbitration are GRANTED. The Clerk of Court is respectfully directed to terminate the pending motions, (Docs. 28, 31), and close the case.

**SO ORDERED.**

Dated: January 14, 2019
      White Plains, New York

                                                              _____
                                                                  CATHY SEIBEL, U.S.D.J.

---

[12] This raises the question as to how Plaintiffs could have asserted in good faith in their Amended Complaint that there are no arbitration agreements between the parties. But I need not reach that issue.